

FILED
MAY 25 201[?]
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

SHERYL T. McCRAY,

    **Plaintiff,**

v.

                                                                          CIVIL NO. 4:14cv158

INFUSED SOLUTIONS, LLC
and JAMIE BAKER,

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court upon the Motions for Summary Judgment filed by Infused Solutions, LLC ("Infused"), and Jamie Baker (collectively, the "Defendants"). ECF Nos. 48, 54 (the "Motions"). At the hearing in this matter, the Court granted Defendants' Motions. This Memorandum Opinion further explains the Court's reasoning.

    I.    **PROCEDURAL AND FACTUAL HISTORY**

        A.    PROCEDURAL HISTORY

Plaintiff initially sued seven defendants. Only two remain. On May 3, 2013, Plaintiff brought an action in federal court against Sergeant First Class Jonah Jancewicz ("SFC Jancewicz"), Ardelle Associates, Inc. ("Ardelle"), Infused Solutions, LLC ("Infused"), Jamie Baker, the United States Army Recruiting Command, a John Doe, and a Jane Doe, in connection with Plaintiff's reprimand and termination. Case No. 4:13cv60, ECF No. 1. Ardelle filed a Motion to Dismiss for Failure to State a Claim, Case No. 4:13cv60, ECF No. 3, which the Court granted without prejudice, Case No. 4:13cv60, ECF No. 27. After the Court dismissed Ardelle, the United States Attorney General certified, pursuant to 28 U.S.C. § 2679(d)(2), that Jancewicz

1

was acting within the scope of his employment during his confrontation with Plaintiff and substituted the United States as defendant. Subsequently, Plaintiff moved to voluntarily dismiss her claims against Jancewicz and the United States Army Recruiting Command. Id., ECF Nos. 32, 37. The Court granted Plaintiff's request for voluntary dismissal on March 26, 2014, id., ECF No. 41, and dismissed the remaining claims for lack of jurisdiction on April 17, 2014, id., ECF No. 45.

On August 7, 2014, Plaintiff filed the second and present action in Hampton Circuit Court. See ECF No. 1, Ex. 1 at 2–13. Plaintiff brought defamation claims against Ardelle, Infused, Baker, SFC Jancewicz, a John Doe, and a Jane Doe, and brought a wrongful termination claim against Ardelle and Infused. See id. By the end of October, 2014, Infused, Baker, and Ardelle had each filed demurrers to Plaintiff's complaint for failure to state a claim. Ardelle also argued Plaintiff's defamation claim was barred by the applicable statute of limitations.

Before the state court could rule on the motions, however, on December 2, 2014, the United States removed the case to this Court pursuant to the United States Attorney's certification that SFC Jancewicz was acting within the scope of his federal employment. ECF No. 1. The United States thus substituted itself for SFC Jancewicz, ECF No. 2, then moved to dismiss itself pursuant to Federal Rule of Civil Procedure 12(b)(1), ECF No. 3. The Court dismissed the United States on April 7, 2015, without opposition from Plaintiff. ECF No. 11. After dismissing the United States, the Court remanded the remainder of the case for lack of jurisdiction, but reversed that action and retained jurisdiction upon Defendants' motion for reconsideration. ECF No. 14 (retaining jurisdiction pursuant to 28 U.S.C. § 2679).

On June 23, 2015, this Court dismissed all claims against Ardelle. ECF No. 23. Specifically, the Court converted Ardelle's state-court Demurrer and Plea in Bar into a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the Court granted. Id.

Plaintiff's previous counsel passed away in 2016, and on June 7 of that year, this Court stayed proceedings to permit Plaintiff's new counsel to familiarize himself with the case. ECF No. 29. On October 5, 2016, Plaintiff moved to amend the complaint. ECF No. 30. Defendants opposed amendment and requested that the Court instead convert Defendants' state-court demurrers into motions to dismiss under the federal rules and dismiss Plaintiff's claims in their entirety, with prejudice. ECF No. 32, 33. At the October 26, 2016 hearing, this Court granted Plaintiff's Motion to Amend/Correct the Complaint. ECF No. 36. Plaintiff timely amended. ECF No. 37.

The Amended Complaint eliminated a previous claim of wrongful termination and added claims of defamation per se and tortious interference with business expectancy. ECF No. 37. The Amended Complaint also dropped the John and Jane Doe defendants, only alleging claims against Infused and Baker. Id. Both Defendants filed motions to dismiss, which Plaintiff opposed. ECF Nos. 38, 39, 40. On September 15, 2017, this Court denied the motions to dismiss. ECF No. 41. On October 6, 2017, both Defendants filed answers to the Amended Complaint. ECF Nos. 42, 43.

On April 18, 2018, Defendants filed Motions for Summary Judgment. ECF Nos. 48-56. Before Plaintiff's responses were due, on April 30, 2018, this Court held the final pretrial conference as scheduled. ECF No. 58. Because trial in this case was scheduled for May 15, 2018, the Court scheduled a hearing on the Motions for May 7, 2018. Plaintiff timely filed her opposition to the Motions on May 2, 2018. ECF No. 60. Defendants replied on May 4, 2018.

ECF No. 61. The Court heard argument from both parties on May 7, 2018, granted both Motions, and entered summary judgment in favor of the Defendants. ECF No. 62. This Memorandum Opinion further explains the Court's reasoning.

### B. UNDISPUTED FACTS

#### 1. Plaintiff Worked as a Civilian Receptionist at an Army Recruiting Center in Hampton, Virginia

From May 14, 2012 to October 4, 2012, Plaintiff worked as a civilian receptionist at the U.S. Army Recruiting Command (USAREC) Center in Hampton, Virginia. Final Pretrial Order, Stipulated Facts ("Stipulated Facts"), ECF No. 59 at 1. The Hampton USAREC Center served as a headquarters for holding USAREC meetings, and as a location to receive, without an appointment, anyone interested in joining the Army. Pl. Dep., ECF No. 60-1 at 6:19-7:23. When Plaintiff began working at the Hampton USAREC Center she worked with Company Commander Jennifer Jones, First Sergeant Christopher Brown, and SFC Jancewicz. Id. at 7:24-8:24. Sometime in June 2012, Company Commander Jennifer Jones was replaced by Jack Irby. Id. at 8:8-12, 25:14-23.

From May 14 until early July of 2012, Plaintiff was employed by government contractor SofTec Solutions and supervised by Lisa Barcelona. Stipulated Facts, ECF No. 59 at 1. In early July of 2012, Infused took over the USAREC staffing contract and began providing staffing services to the Hampton USAREC Center through its subcontractor, Ardelle. Id. at 1-2. Thereafter, Ardelle hired Plaintiff to continue working at the Hampton USAREC Center, and Plaintiff signed an at-will employment agreement with Ardelle on July 5, 2012. Id. at 2; Undisputed Fact ("UF") 7, ECF No. 49 at 3, ECF No. 60 at 5.[1] Thus, Plaintiff's job continued;

---

1. Rather than explicitly state that Plaintiff does not dispute a fact asserted by Defendants, Plaintiff simply omits any reference to certain numbered paragraphs. Based on these omissions, the Court recognizes that Plaintiff does not attempt to dispute the facts asserted by Defendants at paragraphs 1, 2, 7, 12, 13, 19, and 33-37. ECF No. 60

4

only her employer and supervisor changed. Id. at 1-2. SofTec Solutions and Barcelona stopped having any involvement with the Hampton USAREC center. Id. Instead, Yolanda Green-Wilson of Ardelle became Plaintiff's direct supervisor, and Jamie Baker—an employee of Infused—became the Program Manager overseeing the USAREC contract. Id. at 2.

### 2. Plaintiff and SFC Jancewicz had a Verbal Altercation, Which Both Reported

On September 20, 2012, Plaintiff and SFC Jancewicz were the only two people present at the Hampton USAREC Center. Pl. Opp., ECF No. 60 at 2. Around noon, without telling Plaintiff, SFC Jancewicz left the office for lunch. Pl. Dep., ECF No. 60-1 at 43:17-44:13. Realizing SFC Jancewicz had left for more than a short break, Plaintiff locked the door to the office. Pl. Statement re Incident, ECF No. 55 at 44. SFC Jancewicz returned to the office around 1:00 p.m. and knocked on the door. Id.; Pl. Dep., ECF No. 60-1 at 44:9-12. Plaintiff knew SFC Jancewicz did not have a key to the office, but took several minutes before unlocking the door. Pl. Statement re Incident, ECF No. 55 at 44. After letting SFC Jancewicz into the office, Plaintiff asked or told him to—in the future—let her know when he was going to take his lunch break. Id. at 44:9-13. Plaintiff then left for her lunch break and returned one hour and twenty minutes later. Id. at 44:14-15.

When Plaintiff returned from lunch, Plaintiff and SFC Jancewicz engaged in a verbal altercation. Plaintiff and Jancewicz each admit swearing at the other person.[2] Plaintiff and Jancewicz dispute only who initiated and was more aggressive during the altercation. In an affidavit, SFC Jancewicz testified "As soon as [Plaintiff] came back in the office she began

---

at 4-9.
2.   See, e.g., Pl. Dep., 60-1 at 44:14-22 (claiming that upon her return SFC Jancewicz said "I don't work for you. I don't . . . fucking tell you when I go to lunch. . . . you're gone for an hour and 20 minutes. What the hell is wrong with you? . . . you're only assigned an hour for lunch."); Jancewicz Aff., ECF No. 53 at 3 ("I said to her, 'You are fucking nuts if you think I'm going to report to you.'").

screaming at me. She called me all kind of names and used constant profanity. She called me a bitch, an asshole, and that I was broken down." Jancewicz Aff., ECF No. 53 at 3. Plaintiff admits calling SFC Jancewicz a "bitch" and "broken down," but claims it was because he called her a bitch first. Pl. Dep., ECF No. 60-1 at 78:9-12, 79:1-5; see also id. at 45:5-9 ("[H]e just said . . . you don't tell me what to do, and he called me a fucking bitch, and I called him a fucking bitch. We had an exchange of words."). Each claims the other acted in a physically intimidating way.[3] SFC Jancewicz left the office following the verbal altercation. Pl. Dep., ECF No. 60-1 at 45:22-23; Jancewicz Aff., ECF No. 53 at 3. Both individuals reported the incident.

After leaving the Hampton USAREC Center on September 20, 2012, SFC Jancewicz immediately went to a separate Army recruiting office and typed up an official report, which ran five pages. Jancewicz Aff., ECF No. 53 at 4. SFC Jancewicz sent the report up his chain of command to First Sergeant Brown and to Captain Irby. Id. He then had a verbal conversation about the incident with both men that same day. Id. Also on September 20, 2012, SFC Jancewicz typed up a separate email, which he sent to Plaintiff's previous supervisor, Lisa Barcelona. Id. Barcelona informed SFC Jancewicz that she no longer supervised Plaintiff and recommended he email the Contracting Officers Representative ("COR"), James Sprigler. Id. SFC Jancewicz did so, sending COR Sprigler both his official complaint and the email SFC Jancewicz had drafted and sent to Barcelona. Id.

Meanwhile, on September 20, 2012, Plaintiff reported the incident by phone to her supervisor at Ardelle, Yolanda Green Wilson. Pl. Dep., ECF No. 60-1 at 45:24-25. At some point thereafter, Green-Wilson asked Plaintiff to—in the future—email her when Plaintiff left the

---

3. Pl. Dep., ECF No. 60-1 at 45 ("[H]e came back toward me and said we can settle this right now, and he approached me in a threatening manner shaking his fist and getting into my space, and I said, well, how are we going to settle this?"); Jancewicz Aff., ECF No. 53 at 3 ("She kept repeating 'what are you going to do bitch' and 'you don't have any proof.' That is when she really got up in my face, screaming and out of control. That's when I became really scared. That is when I figured out she was trying to bait me and goad me into a fight.").

6

office for lunch. Id. at 60-1 at 50:17-25. Plaintiff also received a call from Captain Irby, who asked her about the incident. Id. at 46:2-5. After Plaintiff provided Captain Irby with her side of the incident, he told her not to come in the next day, Friday, September 21. Id. Plaintiff returned to work on Monday, September 24, 2012 and, on or about that day, First Sergeant Brown asked Plaintiff to give a statement about the incident to COR Sprigler. Id. at 46:15-47:19. The next day, September 25, 2012, Captain Irby and First Sergeant Brown met with Plaintiff in person and asked her what had occurred the day of the incident. Id. at 47:20-24. Also on September 25, 2012, Plaintiff also provided her statement to COR Sprigler. Id. at 50:3-9.

In her statement regarding the September 20, 2012 incident, Plaintiff told SFC Jancewicz she would lock the door in the future and "if [he] gets locked out that's too bad," admits to calling SFC Jancewicz a "fucking bitch," admits to asking him "what's he going to do" multiple times, admits to calling him "broken down," and admits to calling him "worthless." Pl. Statement re Incident, ECF No. 55 at 44. The statement maintains, however, that Plaintiff swore and otherwise confronted SFC Jancewicz only because SFC Jancewicz started it. See id.

### 3. Jamie Baker Investigated the Verbal Altercation at the Request of COR Sprigler and Sent Plaintiff a Warning Notice

On September 26, 2012, COR Sprigler emailed Baker and informed her of the September 20, 2012 incident between Plaintiff and SFC Jancewicz. Sprigler email to Baker, ECF No. 55 at 11. COR Sprigler forwarded SFC Jancewicz's email complaint and attached Plaintiff's statement regarding the incident. Id. In his email, COR Sprigler asked Baker to call him after she had read both complaints/statements. Id.

The body of COR Sprigler's email reproduced SFC Jancewicz's email complaint, which said, in part:

> I just wanted to know the rules of your employees. Our[s] does not show up on time leaves for lunch for a 1/2 and still leaves at 1500. I think it's very

7

unprofessional when she says I have no proof and she says what are you going to do "Bitch"? Since the day she was hired she has talked bad about the Army way of business compared to the way the Airforce does things. I was called a bitch at least 10 times today. I did not curse back at her and just stood there. I'm sure this isn't how you want your employees to act. I was also told that "My broke ass will die when I retire out of the army". After that she got up in my face [and] continued to call me a bitch. She told me numerous times to do something "Bitch" and I had no proof. If you are not who this complaint is supposed to go to please let me know. This employee does not need to be in our company. Our whole job is customer service and if an applicant was being interviewed by my Company commander I wouldn't know what to say to them. This is not my first complaint about this employee I have brought her work ethic up [to] the previous Company Commander and she talked to her about it.

Id. at 11.

Around 9:00 a.m., Baker called COR Sprigler. Id. at 8, 25:17-21. After speaking with COR Sprigler, Baker called and spoke with SFC Jancewicz, First Sergeant Brown, Captain Irby, Plaintiff's supervisor Yolanda Green-Wilson, and Plaintiff. UF19, ECF No. 49 at 9, ECF No. 60 at 8. On her calls with SFC Jancewicz, Captain Irby, and Green-Wilson, Baker gathered first and second-hand information regarding the verbal altercation and was told that Plaintiff had displayed unprofessional behavior, it had occurred more than once, that Plaintiff's previous commander had spoken with Plaintiff regarding the issues, and the situation had escalated on September 20. Baker Dep., ECF No. 60-3 at 14-15, 50:12-53:8. This was consistent with information Plaintiff's supervisor had communicated to Baker when Infused took over the staffing contract: Baker testified "Ms. Barcelona had just mentioned that [Plaintiff] was a difficult and argumentative employee and had been given previous warnings about her behavior." Baker Dep., ECF No. 60-3 at 5, 14:8-17.

Before noon, Baker spoke with Plaintiff and informed Plaintiff that she would be placed on probation for 90 days. Pl. Dep., ECF No. 60-1 at 65:14-66:12. The call lasted about 10 minutes. Id. at 66:13-67:17. After the call, Baker emailed Plaintiff a document entitled "Employee Warning Notice" that said, in part, "Employee is extremely confrontational and

8

exhibiting constant insubordinate behavior towards individuals at her work location. This behavior has been address[ed] previously to the employee and [has] not improved. This behavior has been an issue for over 90 days and appears to be getting significantly worse instead of improving." Warning Notice, ECF No. 55 at 16. The statements contained in that notice are the sole basis for Plaintiff's defamation claim.

In her email sending the notice, Baker asked Plaintiff to acknowledge receipt of the form by signing it, to send Baker Plaintiff's timesheets every Friday with signatures from Plaintiff and a commanding officer, and directed Plaintiff not to communicate directly with USAREC COR. Baker email to Plaintiff, ECF No. 60-7 at 1. Baker blind copied on the email Yolanda Green-Wilson and Art Forcey from Ardelle, and blind copied Akbar Masood from Infused. Id. Plaintiff refused to sign the notice acknowledging its receipt because, she said, it contained untrue statements. Pl. email to Baker, ECF No. 55 at 87. Plaintiff requested written documentation of her behavior being addressed previously, but Baker did not provide any such documentation. Pl. Dep., ECF No. 60-1 at 57:12-21. Ultimately, a witness signed the warning notice to confirm Plaintiff had received it. ECF No. 55 at 17.

### 4. Ardelle Terminated Plaintiff

At 2:30 p.m. on September 26, 2012, personnel from Infused and Ardelle participated in a previously scheduled call. Baker Aff., ECF No. 50 at 4. The people on the call discussed matters including the new hire process, reimbursement policies, training requests, and timesheets. See Baker email to Adkins & Forcey, ECF No. 55 at 23-24. At the end of the call, the participants also discussed Plaintiff and the September 20, 2012 incident. Id. During that discussion, Ardelle determined it would terminate Plaintiff as soon as it was able to secure a replacement. See id. at 24.

On October 4, 2012, Ardelle terminated Plaintiff. Green-Wilson email to Pl., ECF No. 55

at 19.

## II. LEGAL STANDARD

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); see also Kelley v. United Parcel Service, Inc., 528 Fed. App'x 285, 285 (4th Cir. 2013). The moving party has the initial burden of showing that no genuine dispute of material facts exists; however, "[o]nce a [moving party] makes a properly supported motion for summary judgment, the burden shifts to the [nonmoving party] to set forth specific facts showing that there is a genuine issue for trial." Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810, 817 (4th Cir. 1995).

When reviewing a motion for summary judgment, the court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992), cert. denied, 507 U.S. 918 (1993); see also EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). However, "only 'reasonable' inferences from the evidence need be considered by the court." Sylvia Development Corp., 48 F.3d at 818. The Court of Appeals for the Fourth Circuit has elaborated on this principle, indicating that "[p]ermissible inferences must still be within the range of reasonable possibility, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (quoting Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir. 1958) cert. denied, 358 U.S. 908 (1958)). "Whether an inference is reasonable cannot be decided in a vacuum; it must be considered 'in light of the competing inferences' to the contrary." Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986)).

## III. PLAINTIFF'S DEFAMATION AND DEFAMATION PER SE CLAIMS

### A. STANDARD

"The elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent.'" Tharpe v. Saunders, 737 S.E.2d 890, 892 (Va. 2013) (quoting Jordan v. Kollman, 612 S.E.2d 203, 206 (Va. 2005)). "[T]he publication element of a defamation action requires dissemination of the statement to a third party in a nonprivileged context." Shaheen v. WellPoint Companies, Inc., 490 Fed. App'x 552, 555 (4th Cir. 2012) (applying Virginia law). "It is sufficient to show that, when the defendant addressed the defamatory words to the plaintiff, another person was present, heard the words spoken, and understood the statement as referring to the plaintiff." Food Lion, Inc. v. Melton, 458 S.E.2d 580, 584 (Va. 1995).

To be actionable, a statement must be false and defamatory. Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). Whether a statement is actionable is a matter of law. Id. "Defamatory statements must be more than merely unpleasant or offensive; rather, they must make the plaintiff appear odious, infamous, or ridiculous." Shaheen, 490 Fed. App'x at 555 (internal quotations and citations omitted).

At common law, certain defamatory statements can be actionable per se, including statements "which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of duties of such an office or employment; [and statements] which prejudice such person in his or her profession or trade." Fleming v. Moore, 221 Va. 884, 275 S.E.2d 632, 635 (1981). A statement that is per se defamatory must be "'necessarily hurtful' in its effect upon plaintiff's business and must affect him in his particular trade or occupation . . . . There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation[.]" Fleming, 275 S.E.2d at 636.

11

B.  DISCUSSION

Defendant's argue they are entitled to summary judgment on Plaintiff's defamation claims for four reasons: (1) Defendants are entitled as government contractors to an absolute immunity/privilege; (2) the allegedly defamatory statements are true, or there is no evidence the statements were false or Defendants should have known the statements were false; (3) Defendants are entitled to a qualified privilege in employment related matters and Plaintiff cannot show malice; (4) Defendants did not publish the statements to a third party.

1.  The Communication at Issue Was Not Protected by an Absolute Privilege

Defendants argue the September 26, 2012 warning notice is protected by an absolute privilege because it was made "(i) to fulfill a governmentally imposed duty to inform, or (ii) in response to an official query from the government." ECF No. 49 at 19. Defendants rely on three cases to support their position. However, the privilege applied in those cases does not apply to the warning notice at issue here.

In Becker v. Philco Corp., two employees sued their employer, a government defense contractor, for allegedly defaming them in a report it made to the United States. 372 F.2d 771, 776 (4th Cir. 1967). The employer received and generated secret information as part of its business, and its employees thus had to be cleared by the United States in order to access that information and perform their jobs. Accordingly, the United States required the employer to inform it of any actual or suspected breaches of confidence. The employer learned of a suspected breach by the employees, commenced an investigation, and informed the United States. The United States suspended the employees' clearances pending a final decision on their alleged breaches and—in the meantime—the employees lost their positions with their employer and lost the chance for similar employment. The Fourth Circuit held the employees could not sue for defamation; the employer's report to the government was absolutely privileged.

First, the court emphasized the employer's contract with the United States required it to report actual and suspected compromises of classified information: "the company has no discretion and is mandatorily ordered to report the suspicion immediately. . . . both true and false accusations, both substantial and insubstantial suggestions, perhaps [even rumors]." Id. at 773–74. Next, the court analogized the contractor to a government agency, noting it "worked in knowledge exclusively the sovereign's . . . a sharing of confidence, quite aside from a subcontract for the production of defense supplies." Id. at 774. The court found a Federal agency or employee who made such a report under similar circumstances would be accorded an absolute privilege. Id. Thus, the court held, "an action for libel will not lie in the circumstances against a private party fulfilling its governmentally imposed duty to inform." Id. at 776.

In Mangold v. Analytic Services, Inc., the Fourth Circuit addressed "whether absolute immunity shields a government contractor from liability arising from statements it made in response to government investigators during an official investigation." 77 F.3d 1442, 1444 (4th Cir. 1996). In that case, a government contractor provided testimony and other information in response to an official Air Force investigation regarding an Air Force colonel's dealings with that contractor. Id. Based on that testimony, the colonel sued the contractor for defamation. Id. at 1445. The court held the contractor was protected by absolute immunity, growing from "two roots, one drawing on the public interest in identifying and addressing fraud, waste, and mismanagement in government, and the other drawing on the common law privilege to testify with absolute immunity in courts of law, before grand juries, and before government investigators." Id. at 1449. The court also stressed that "the scope of that immunity is defined by the nature of the function being performed and not by the office or the position of the particular employee involved." Id. at 1447.

At least one court in this District has distilled the rules from these cases as follows:

> [G]overnment contractors are immune from defamation actions (i) where the allegedly defamatory statements are made by a "private party fulfilling its governmentally imposed duty to inform[,]" Becker v. Philco Corp., 372 F.2d 771, 776 (4th Cir. 1967), and (ii) where the allegedly defamatory statements are "given by a government contractor and its employees <u>in response to queries</u> by government investigators engaged in an official investigation," Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1449 (4th Cir. 1996).

Liverett v. DynCorp Int'l LLC, No. 1:17CV811, 2018 WL 1533013, at *5 (E.D. Va. Mar. 28, 2018). There, the plaintiff brought several defamation claims against a Department of Defense contractor who reported an incident involving the plaintiff to the U.S. Army and made statements in response to questions from government investigators. Id. The court ruled the contractor's reporting the incident was protected by absolute privilege under Becker, and that the contractor's answering questions was protected by absolute privilege under Mangold. Id.

Here, Defendants are not protected by absolute privilege for several reasons. Most obviously, the communication at issue was not sent <u>to the United States</u>. Baker sent Plaintiff the warning notice and blind copied Plaintiff's employer, Ardelle. Nor was the warning notice "required." See Press v. United States, No. CV JKB-17-1667, 2018 WL 1211537, at *7–8 (D. Md. Mar. 8, 2018) (ruling no absolute privilege protected communication from contractor to government where that communication was not "required"). Plaintiff was an at-will employee who Ardelle and Infused decided to terminate on September 26, 2012 notwithstanding the fact that Baker had sent the 90-day warning notice that same day. Finally, under Mangold, communications by contractors are protected by absolute privilege only when they are made in response to an official investigation. See Al Shimari v. CACI Int'l, Inc., 679 F.3d 205, 223 (4th Cir. 2012) ("In Mangold . . . the relevant issues on appeal from summary judgment included whether government personnel were conducting an 'official investigation' . . . ."); Kolakowski v. Lynch, No. 1-13-CV-1072, 2013 WL 6087008, at *2 (E.D. Va. Nov. 5, 2013) ("The only

14

remaining question therefore is whether the FBI query was part of an 'official investigation.'"). The brief email and follow up phone call from COR Sprigler to Baker was not an "official investigation" in any sense. Indeed, COR Sprigler stressed to Baker that he should not have received Plaintiff's complaint in the first place—Plaintiff should have sent her complaint to Ardelle and/or Infused, who could then take appropriate action. The function being performed was not inherently governmental or "official," but simply a matter of employee management and discipline that is common in the private sector.

Thus, Defendants' authority does not support application of an absolute privilege in this case, and the Court finds no reason to expand application of absolute privilege to these circumstances.

### 2. The Communication at Issue Was Protected by a Qualified Privilege that Plaintiff Has Not Produced Sufficient Evidence to Overcome

The warning notice was, however, protected by a qualified privilege. "Virginia recognizes a qualified privilege for communications between persons on a subject in which the persons have an interest or duty." Shaheen, 490 Fed. App'x at 555 (internal quotations and citations omitted). However, this qualified privilege "may be overcome if the plaintiff proves malice." Great Coastal Exp., Inc. v. Ellington, 230 Va. 142, 334 S.E.2d 846, 853 (1985). Plaintiff's defamation claim is based on Defendants' publication of the warning notice to Plaintiff's employer, Ardelle. As outlined above, Ardelle employed plaintiff as a civilian receptionist at the U.S. Army's Hampton USAREC Center. Ardelle did so through a subcontract with Infused, which was the prime contractor with the U.S. Army. Baker was a human resources specialist for Infused, and was specifically in charge of the contract under which Plaintiff worked. As the general contractor, one of its human resources specialists, and a government subcontractor, Infused, Baker, and Ardelle had an interest in how Infused's subcontractors and

Ardelle's employees were serving the ultimate client, the U.S. Army. This was the subject of the warning notice. Accordingly, the warning notice is protected by a qualified privilege.

To overcome this privilege, Plaintiff must prove the communication was made with malice, Cashion v. Smith, 749 S.E.2d 526, 531 (Va. 2013), that is "that the communication was actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff," or that it was made with a legal equivalent to malice, "that the communication was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff," Shaheen, 490 Fed. App'x at 555 (internal quotations and citations omitted). Plaintiff must prove malice by clear and convicting evidence. Id.

"The party moving for summary judgment 'discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case.'" Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 540 (4th Cir. 2015), as amended (June 24, 2015) (quoting Kitchen v. Upshaw, 286 F.3d 179, 182 (4th Cir. 2002)). Beyond simply pointing to an absence of evidence, however, Defendants have presented evidence to prove that Baker and Infused were not motivated by malice when they sent the warning notice to Ardelle.

Defendants presented evidence that Baker did not act with actual malice. Specifically, Baker did not know Plaintiff before Baker spoke with her and sent her the warning notice. Baker Dep., ECF No. 60-3 at 19, 70:3-9; Pl. Dep., ECF No. 60-1 at 16:2-3. Not knowing Plaintiff, Baker had no reason to harbor personal spite or ill will toward Plaintiff.

Defendants also presented evidence that, even if statements in the warning notice were false, Baker did not know they were false nor act with gross indifference and recklessness as to amount to a wanton or willful disregard for Plaintiff's rights. Again, Plaintiff claims the

following statement was false: "Employee is extremely confrontational and exhibiting constant insubordinate behavior towards individuals at her work location. This behavior has been addressed previously to the employee and not improved. This behavior has been an issue for over 90 days and appears to be getting significantly worse instead of improving." ECF No. 55 at 16.[4] Whether the statement is true or false is not clear from the record. However, even assuming the statement is false, Defendants presented written evidence and undisputed testimony to prove Baker had reason to believe the statement was true and did not act recklessly in making the statement.

First, Baker received SFC Jancewicz's email complaint to COR Sprigler that described his side of the September 20, 2012 incident, reported swearing by Plaintiff, said her unprofessional conduct had gone on "[s]ince the day she was hired," and said "[t]his is not my first complaint about [Plaintiff] I have brought her work ethic up [to] the previous Company Commander and she talked to her about it." Sprigler email to Baker, ECF No. 55 at 11. Next, Baker conducted a thorough investigation of the September 20, 2012 incident. She attempted to speak with anyone who may have first- or second-hand knowledge, including COR Sprigler, SFC Jancewicz, First Sergeant Brown, Captain Irby, and Plaintiff's supervisor Yolanda Green-Wilson. That investigation included reviewing Plaintiff's own statement in which she admitted to swearing at SFC Jancewicz on September 20, 2012. Moreover, Baker testified that she had a phone conversation with Plaintiff's previous supervisor who told Baker that Plaintiff "was a difficult and argumentative employee and had been given previous warnings about her behavior." Baker Dep., ECF No. 60-3 at 5, 14:15-17.

---

4. Although in deciding these Motions the Court does not make any determinations regarding credibility, it is worth noting that Plaintiff's opinion of what qualifies as "confrontational" apparently differs from the average person. See Pl. Dep., ECF No. 60-1 at 83:16-17 (testifying "I don't understand the question. Calling someone a bitch is not confrontational.").

Because Defendants have met their burden to show the lack of a triable issue regarding malice, in order to survive summary judgment Plaintiff must present "specific facts showing that there is a genuine issue for trial." Humphreys, 790 F.3d 532, 540 (4th Cir. 2015) (citations and internal marks omitted). To do so, she must "rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Id. (quoting Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013)). And must present "'sufficient evidence to permit a reasonable jury to find' in [her] favor.'" Id. quoting Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 175 (4th Cir. 1988)). Plaintiff has not met her burden. The only "specific fact" to which Plaintiff can point in an attempt to create the inference of malice is Plaintiff's testimony that Baker said COR Sprigler had yelled at Baker regarding the September 20, 2012 incident. Indeed, Plaintiff herself admitted that she does not believe Baker was motivated by personal ill will when Baker sent the warning notice. See Pl. Dep. ECF No. 60-1 at 63 (testifying "it became personal [for Baker] I felt when I did not sign off on those statements that were false [in the warning notice]").

Accordingly, Defendants have demonstrated that there is no triable issue of fact regarding the existence of malice, and Plaintiff has failed to present sufficient evidence to allow a reasonable jury to conclude that Baker, and thus Infused, acted with actual or common law malice.

## IV. PLAINTIFF'S TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY CLAIM

### A. STANDARD

In Virginia, a plaintiff must prove four elements in order to establish a claim for tortious interference: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional

interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. DurrettBradshaw, P.C. v. MRC Consulting, L.C., 670 S.E.2d 704, 706 (Va. 2009).

Generally, the alleged interferer cannot be a party to the business expectancy. Beall v. Abbott Labs., 130 F.3d 614, 621 (4th Cir. 1997). Rather, a tortious interference claim requires the existence of three actors: two parties to the contract and a third party who interferes with, or induces one of the parties to breach the contract. Storey v. Patient First Corp., 207 F. Supp. 2d. 431, 448 (E.D. Va. 2002). (However, if it can be shown that an agent of a party to the contract was acting outside of the scope of his employment in tortiously interfering with such contract, then the aggrieved party may be entitled to recover . . . ." Storey, 207 F. Supp. 2d. at 448 (citing Wuchenich v. Shenendoah Memorial Hospital, No. 99-1273, 2000 WL 665633, at *17 (4th Cir. May 22, 2000)).

Here, Plaintiff's employment contract was terminable at will, but "the fact that a contract is terminable at the will of the parties does not make it terminable at the will of others." Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987). Where a contract is terminable at will, the plaintiff must not only allege and prove that the interference was intentional, but also that the defendant "employed 'improper methods'" in securing termination of the contract. Dunn, McCormack & MacPherson v. Connolly, 708 S.E.2d 867, 870 (Va. 2011) (quoting Duggin, 360 S.E.2d at 836 (Va. 1987)). The Supreme Court of Virginia has recognized that defamation may constitute an improper method of interference. Duggin, 360 S.E.2d at 836.

B. DISCUSSION

Defendant's argue they are entitled to summary judgment on Plaintiff's claim for tortious interference with contractual relations for two reasons: (1) Defendants did not interfere through

improper means and (2) Defendants claim an economic or financial interest in their USAREC contract, which provides an affirmative defense that defeats tortious interference. Because Defendants prevail on their first argument, the Court need not reach the second.

As the basis of her tortious interference with business expectancy claim, Plaintiff alleges she had a valid at-will employment contract with Ardelle, she expected continued employment, Defendants were aware of the relationship, and Defendants interfered with this relationship by defaming Plaintiff, and thus secured her termination. Am. Compl., ECF No. 37, ¶ 37–41. As stated above, because Plaintiff's employment contract was terminable at will, Plaintiff must "prove not only an <u>intentional</u> interference . . . caused the termination of the at-will contract, but also that the defendant employed '<u>improper</u> methods.'" Duggin, 360 S.E.2d at 836. Defamation is an improper method of interference, <u>id.</u>; <u>see also</u> Stamathis v. Flying J, Inc., No. CIV.A.7:01CV00838, 2002 WL 1477586, at *7 (W.D. Va. July 9, 2002); Gilmore v. Peoples Serv. Drug Stores, Inc., No. LT-446-4., 1991 WL 834973, at *1 (Va. Cir. Ct. May 17, 1991), but Plaintiff has failed to present sufficient evidence to support a viable claim for defamation, <u>see</u> <u>supra</u>, Part III. Thus, this Court must also grant summary judgment denying her claim for intentional interference with a business expectancy.

V. CONCLUSION

Accordingly, for the reasons stated herein and on the record, the Court **GRANTED** Defendants' Motions for Summary Judgment. ECF Nos. 48, 54, and entered summary judgment.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion to all Counsel of Record.

**IT IS SO ORDERED.**

5/25/2018
Norfolk, Virginia

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE